Good morning, your honors. Janice Lagerlof, appearing for Sonia Daniels. Could you talk louder, please? Sure. Is that better? Thanks. This is a case full of tragedy. What happened to Ms. Daniels' son, of course, is an awful thing to consider. What the justice system has done to Ms. Daniels in the meantime, I think, while not consisting of the loss of her life, has resulted in... I'm sorry. I still need you to talk louder. Mike isn't doing it. Just talk louder. Okay. I've got a problem on this, and let me lay it out for you. The battered woman testimony that you wanted to get in, it looked to me as though the judge said, well, I don't see the relevance, the way things are presented so far, but he didn't absolutely close the door to it. And then Daniels' lawyer told the judge the only trial issue would be the cause of death. And the defense presented a case that the cause of death could have been one of the many awful diseases that happens to infants so that they die without anybody doing anything bad to them. And when Daniels testified, she didn't say, my husband beat me and my husband abused me and he made me not feed the kid and make the kid drink out of the toilet and stuff like that. I don't understand, in light of what the defense lawyer told the judge the case would be about and what the case turned out to be about, and the defendant's testimony, what battered woman syndrome had to do with anything in the case, what the relevance was. Well, I think this is a record where you're not probably able to understand that, but I would suggest that there were numerous discussions about getting I don't understand. Why wouldn't I be able to understand it from her? Well, because she wasn't able to answer any of the questions in the honest way that she wanted to based on why she didn't take Wait, she was under oath and she answered the questions. I'm not getting this off my head. Well, the judge threatened to withdraw her O.R. status if she continued to say when the prosecutor was asking her why didn't you do this, why didn't you do this, she tried to I can't respond to that question accurately. What Ms. Daniels wanted to say, which is included in the declaration that was attached to the habeas, which is in the supplemental record, was to put in context everything that happened in the marriage and in Jory's life, starting with his being assaulted by her husband at the age of four months old with a fractured skull and a broken leg, her taking him to the hospital, and problems starting with Brian then resisting having anything to do with The trial judge didn't know why. If the trial judge, all he hears on the record is that she treated the kid fine, she fed him, he was making noise at the time when he was actually in rigor mortis, and there's no evidence, she never testifies that her husband made her do it or she was scared of her husband because of something he'd done. How is a trial judge supposed to know There were, by my calculations, 13 different instances during the trial, not in front of the jury, but between the parties, with all the parties present, beginning with in limine motions, where Brian moved to exclude evidence of domestic violence, that was like at the very beginning, before the trial even began. The prosecutor had not intended to oppose using domestic violence evidence until Brian brought it up. And then there were rulings throughout the trial on February 18th through the new trial motion, where there was repeated efforts by the defense. He didn't move to exclude domestic violence evidence generally, he moved to exclude evidence of some order that had been issued against him. I can't remember if it was a TRO or what. He moved to exclude evidence of a domestic violence incident that happened four or five days before Jory died. But that doesn't mean you couldn't prove a whole course of other domestic violence. But the way this ruling evolved was initially the judge sort of saying I'll leave it open for you, and later as the case went on. The judges keep out things where somebody has made an accusation and it wasn't proved, or there's a conviction for something that's highly prejudicial but not probative. Am I recollecting he wasn't convicted of this domestic violence? No, she dropped the charges. Domestic violence was five days before. The domestic violence he was accused but not convicted five days before? Yes. And what the judge excluded was evidence of the accusation? No, the judge excluded evidence that Brian had been removed from the home and taken to the jail and that Sonya brought her children to the jail where the police were five days or two days later to drop the charges. So it looked like he was convicted and put in jail but actually wasn't convicted? He was arrested by police, brought out of the house. Was he convicted? No, she dropped the charges. Okay, so he wasn't convicted. And the judge's ruling say you couldn't prove domestic violence? The judge ruled ultimately that domestic violence was irrelevant in this case because the batterer was not the victim. And although they discussed a number of different aspects of this, as the trial went on, the judge more and more dug his heels in and said this is not relevant because you didn't kill your batterer. Could you give us the page number so I can read what the judge said? You must have a tab on it there. I have a number of them. It might take me a moment. I bet you have a tab with an asterisk on the good part. I wish I would have done that before I came. I'm sorry that I didn't. But the first excerpt is March 5th, page one, where there's a long discussion, and I believe that actually there's an additional couple of pages missing and the attorney general has added some portions of that record in his supplemental excerpts. There is a discussion on... The ER or SER page number would be great. I believe that was one. I'd have to pull it up. Page one of the excerpts. Okay. Got it. Page eight. Mine stops at 810, I think, and he starts at 812 or something. There's an additional... Discussion at page 15. Some of these are sort of lengthy. I don't know if you would need me to point to specific lines. I would need some time to be able to provide those to you. You're dropping your voice. I guess my worry is, and I'm glad to have you do the excerpts if you have some for my colleagues. I can, like, find the specific ones. I don't know if you want to take the time to do that right now. I'm glad to send you a letter this afternoon pointing to the specific line numbers. In this part, what the judge ultimately says is, I don't know what Mr. Leininger intends to do, and he doesn't have to tell me as to what his defense is. Where is that, Judge? I'm sorry. Page 14. I'm not getting the part where the judge says what you cannot get in and why. It looks like a lengthy colloquy where the judge is trying to find out what it is that the defense is trying to do, except appeal to sympathy. What they're trying to prove, and it looks like he's not getting it. Getting an answer. The defense is trying to prove. Well, the defense was trying to argue, and he argued it in his closing argument as well, that this was tried as an intentional, well, originally first-degree torture murder, so they had to prove intent to torture. The jury rejected that, but in the implied malice aspect of this case, the prosecutor had to prove conscious disregard and knowledge of the life-endangering aspects of this. The prosecutor argued that that could be shown by Ms. Daniels' conduct in not taking the child to the hospital, even if the jury had questions about the intentionality of the feeding. So when you got to that aspect of the case, the prosecutor repeatedly cross-examined Ms. Daniels about why she didn't take him to the hospital, why she didn't seek doctor's treatment, and the reality of that was that there had to be an intent to torture. It had been a prior child abuse case, which Brian admitted to people doing. He had fractured Jory's skull and broken his leg when he was four months old. They went into the foster care system. What the judge is saying here, page 20, is he says if you want a person to testify as a battered spouse expert and you want the person to give an opinion, he or she can do that, based on admissible evidence. But then he says the expert can't testify that, in the expert's opinion, Sonia Daniels is a battered spouse because she told somebody that Brian Daniels put a knot on the back of her head by hitting her, or told somebody slammed her against the headboard and hit her head, because that would be hearsay. So it looks like he's leaving the door open and getting it in. It's just he's trying to figure out from the lawyers, what are you trying to prove and what foundation are you going to have for it? She wasn't permitted to lay that foundation, and then the court later on, as the case went on, this was revisited over and over and over again, and no matter what the discussion was, the end result was always the court determining that this was not relevant because Jory was not the person who battered her. And he wouldn't even hold a 402 hearing so that the expert could convince him. I can't figure out why, without some proof that a person is, in fact, a battered spouse, you could put an expert on to testify about battered spouse syndrome. It seems like it would have no relevance to the case, and all it would do is have relevance to the idea, don't convict spouses, or at least female spouses. Well, but Your Honor's question earlier about Brian not being convicted of domestic violence, therefore what he did to Sonya four days before Jory died, not being relevant, undermines her ability to lay a foundation for that expert. I must not be making myself clear. What evidence, was there any evidence in the record that established that Sonya Daniels was, in fact, a battered spouse, or can you point to any evidence in the record that established that Sonya Daniels was, in fact, a battered spouse? Yes. The evidence... These numbers are great. Well, I mean, I would have to find those for you. You just want us to reread the whole thing? No, no, I'll provide them for you, but you're not going to find evidence that Sonya was a battered spouse in Sonya's testimony or any of her other witnesses' testimony, because the judge wouldn't let anybody testify about it. Okay. Where did he keep it out? All I've got so far is that he kept out this part about Brian, that he was arrested and went to jail, but actually she dropped the charges and he wasn't convicted. And that he would keep out, because the prejudice outweighs the probative value, and it has all it really shows is that she accused him. It doesn't show he beat her. But the other part of that is that on that night she called the police and they came away and investigated and took him to jail and kept him there for several days. So what? Innocent people go to jail sometimes. Even we spring some of them. And battered women sometimes drop charges against their husbands, but her declaration about what she would have testified to... Well, because I was scared he'd beat me some more when he finally got out. Then you've got your foundation. But that never happened. She wasn't permitted to testify to that. She wasn't permitted to do anything other than say, I was in the hotel room or the apartment alone from March 31st until April 4th. She was not permitted to say that that was because the police took him away after he had been on top of her, beating her when she told him she was pregnant for the fifth time. She wasn't allowed to say that the police took him away and put him in jail. But I don't think the judge ever said you can't testify that he beat you. Did he? I might have overlooked it. I believe that the judge's blanket ruling was that you can't talk about domestic violence because your batterer is not the person you killed. Okay. I would love to read this blanket ruling. Where? I have cited in my opening brief excerpts of record, pages 19 to 26, 29, 31, 36 to 51, 61 to 62. It's in my brief at page 19. Okay. I've looked at most of them. 19. What portion or at what point in the trial or this entire prosecution did Judge Vaughn say this? At what point? Are we talking about in limine? Are we talking about prior motions? Or are we talking about the case in chief? Where is it that this takes place? It's everywhere. In the in limine motions, it was initially discussed that the incident right preceding jury's death would be excluded from the case. And then there was evidence repeatedly, February 28th, March 2nd, March 10th, March 27th, February 13th, February 14th, I mean April 13th, 14th, 15th. It was brought up over and over again, both in the during the case in chief when the defense lawyer pushed the judge to the end of his patience with bringing this back up. I've skimmed through everything that you've cited. And all he's talking about here, as far as I can tell, and I could have missed it, because you know the case better than I do, is that you haven't put on anything that would let an expert testify. And he says if the battered spouse is going to testify about why he or she did something or didn't do something because of what was going on in their life, that might be appropriate. And then he says that he's not going to preclude the defense lawyer from bringing it up again. And the defense lawyer says if I have permission to revisit it, that's fine. It looks like right now I don't see any foundation, but if you put on proof that would establish a foundation and some relevance, I'll revisit it. I can't find the part that you told me was there where the judge says you can't talk about domestic violence, and that's what I'm looking for. The blanket, well, it certainly comes up by the time the court refuses to have a 402 hearing to permit a foundation to be laid by the expert. You don't give me these string sites to excerpt pages and not a single one of them supports you. You tell me there's a blanket ruling which is absolutely critical to the case. You can't talk about domestic violence on the witness stand. I want to read it. So give me the page number where it is. Page 70, what does domestic violence got to do with the facts and circumstances as to how a jury died? Okay, I'm at page 70. It's beginning on line 11. And I'm taking this out of context because I'm wanting to find a specific... There's no ruling there, you can't talk about domestic violence. It just doesn't say what you said it said. Well, I think that it does in the context of the fact that this evidence did not come in. The court is repeatedly saying there's no case. We've all been trial lawyers. You do what you're allowed to do. If the judge says you can't do something, you see if there's a way you can get around that without getting in trouble. And if he bars it all together, you don't do it. Now, you've told me you've barred it all together. That's really important. So I want to read the bar, and you're just not helping me. There's a... Page 81 to 82. This is in the context of a motion for new trial, a motion for mistrial by the defense, co-defendant's lawyer, after Ms. Daniels is trying to answer questions and says she can't answer, and she's trying to allude to... what happened in her mind, and the court says at the bottom of page 81, I don't want to revisit the history of this issue except to rule. To repeat, I rule that evidence of battered spouse syndrome is not relevant. I rule previously it isn't relevant as it bears upon a state of mind which isn't relevant in this case. And he goes on. He calls it diminished capacity. I totally dispute that that's what they were trying to say. And then he goes on to talk about if she did something, it's sort of in the duress context. If she was specifically told to do this or I will hurt you, she can say that. But that's not a defense to murder in California. So that was he was permitting small, specific instances of conduct without... He says if she did something because she was threatened, she can testify to it. If she didn't do something because she had a state of mind or she didn't feel capable, that's not admissible. But if somebody threatened her and said, for instance, if you bring Jory to the doctor, I'm going to beat you up, she can say that. So it looks like she can get testimony in that he beat her up or threatened to beat her up or she feared being beaten up. Well, he didn't say feared. He said if he threatened. And battered women, had the expert been permitted to testify about how a battered woman perceives her situation, don't necessarily need an explicit threat to know that there can be consequences for doing something that in a broader context, their batterer does not want them to do. And because of the history of abuse that she had suffered, because of Brian's former problems with the law about beating Jory, he was very reluctant to have her children seen by the doctor because he didn't want his problems to continue or to reoccur. So to squeeze a battered women's defense or a battered women's defense, a defense to the elements of conscious disregard into a question of a specific threat connected to a specific act or a mission, undermined the entire ability for the jury to understand how a woman who has been in a repeatedly extremely violent situation with a child who's also been beaten as well as herself would respond to understanding, even if he's in jail now, he will be out, I'll still be in trouble. With the evidence that she was in an extremely violent situation, except for her own violence and perhaps her husband's violence against the baby. If you're talking about on this record, there was none because the judge wouldn't permit her to testify about it. She had Dr. Augenstein, who did submit a record to the court along with one of the motions, describing her conclusions after talking with Ms. Daniels about what had happened. I mean, this is not an atypical situation. Just the opposite here. Like she's asked, why didn't you take Jory to the doctor? You said because Brian didn't want you to, is that right? And she says, well, there's more to it than that, but I can't get into the other part. Maybe she thinks the judge won't let her get into the other part, but if she's under that misimpression, the judge immediately corrects her. He says, I'm going to have to admonish you, Ms. Daniels, not to respond in that fashion. So questions asked, she can answer it. Your Honor, excuse me, but what he's referring to by my reading of the record and the entire exchanges that had gone on is that she's not supposed to say that she's not allowed to talk about it. She's supposed to just say, I didn't, because Brian said so, and she's not supposed to say why. That's part of what runs through the whole discussion of the cross-examination, where the prosecutor says, you know, why didn't you, why didn't you, and she says she can't. And there's even a, I can find it if you give me a moment, there's an aspect here or a citation here where the court recognizes that those kinds of questions are problematic coming from the prosecutor because of his ruling excluding that evidence of her talking about that. This is a horribly tragic set of circumstances that we're faced with here, but isn't it a tragedy that she didn't continue the prosecution of her husband for the time she was in custody and then she drops the charges? It absolutely is, Your Honor. Just as a personal note, I directed a battered women's shelter for several years in the early 1980s, and I'm very familiar with the psychology of the women that I worked with there. Those of us who are surrounded by resources in our lives have a hard time understanding the kinds of pressures on a woman who was 18 years old when she was in custody. She started to be, when she had the first child, was involved in a battering relationship from the time she was 16. We don't know if she's in a battered relationship. It's a tragic situation. But the problem in the case is, is she the victim of the tragedy or the perpetrator of the tragedy? I don't think they're mutually exclusive, Judge. What? I don't think those are mutually exclusive. I think she could be a victim herself. She admitted that she bore responsibility. She didn't admit that she killed her son, but she did admit, and the trial was several years later. They delayed it until she gave birth to the child she was pregnant with on the night that Jory died. But she had been out of that relationship then for a couple of years, so she probably appeared differently on the stand. But she was not permitted to tell the court, or to tell the jury, what the full context of their relationship was. Dr. Augenstein's declaration submitted with the habeas, which is in the record, talks about the connection of failure to thrive and domestic violence. She was not permitted to say the police came and took her husband away. They came back to investigate. She wouldn't let them in. That was used as indication. Your time is over, and you're repeating an argument you made before. Thank you, counsel. May it please the court, Alan Yano, appearing for the respondent. Before I begin, there are two things I would like to point out. There are a couple of proofreading mistakes in my brief on page 34. There's an extra since, and in the middle of the page, and on page 43, there's an extra would on the third line from the top. So I apologize for that. In answer to one of Judge Kleinfeld's comments at the outset, I believe that what the defense doctors testified to was not that something else could have been the cause of death, but rather that they couldn't rule out those things as being cause of death. I think it's a slight distinction. Before we get to that, the judge was under the impression that the battered spouse syndrome could be used if a woman killed her husband, but not if she killed her child, if I read him right. Is that right? Is that California law? Well, it can be viewed, it's that way if it's relevant, it has to be relevant to some issue and dispute. So it can be, if you're talking about the case. You cited a Mills case, which I have not read, some California case. I thought Mills was a non-California, I'm not sure. But I think the judge thought battered spouse is good if you killed your husband, but not if you killed your baby. The rest is good if you killed your baby. The rest is a complete defense. What did the judge say, and what was she allowed to prove? She was allowed to prove, that's what we covered in our brief. As I read the record on page 88 of the excerpts, and specifically as I was going through this and listening to your questions, page 88 of the excerpts of the record, it seems to say, the judge seems to be saying, well, you can't go to these prior incidents of battering, but if you want to come in and say that I was afraid of Brian, or if you want to come in and say Brian threatened me, that you can do. And as I read this record, he, it was, I understood this to be cases of prior incidents of battering that the judge did not allow. That's why I thought that was important in this case to point out, is that when we look at the way this played out into the, which she actually testified to, the battering really has nothing to do with what her defense was. Her defense was, I didn't see anything wrong with him, so I couldn't have implied malice, because I had no reason to believe that this was a life threat. I did not. Could you point this to the excerpt page where that is? That was basically her testimony. We quoted it in our. I know it's in the brief.  Okay, I. It might take me a minute to find it. It was in the court of appeals opinion, which is part of the excerpts of record. And it's on, I have an excerpt from the court of appeals opinion at ER 201-203. I think basically what I did here was to cite the facts from the record citations to the facts of the case from the court of appeals opinion. I don't believe that there's any dispute that that is what she testified to. Got it. The state of California. 32 and 33. Well, I just have the excerpts of record citation there. Page 201. Is that right? That's where it would start. It's page 202. When the first full paragraph starts at the beginning, in the middle of that paragraph, there's a paragraph that starts in the middle of the page, and it says Sonia testified that she had always fed Jory regularly. So basically my argument is that if we're going on a theory. Okay, now could you show us where there was some support in the transcript for what the court of appeals said? As I remember, what the brief said is that Sonia didn't testify. I didn't take him to the doctor or feed him because I was scared of Brian. She testified I didn't take him to the doctor because there was nothing wrong with him, and he looked fine to me, and he was well fed. But I'd like to find it. Okay. I don't recall putting in a transcript citation to it. It's possible that I did. I'm sorry, I don't have an excerpt record citation for it, but that's one place where it is. R.T. means I don't get to see it. I'm sorry. Okay. Then we just apply 2254 to it. Well, I get your 2254 deference. Right, but I want to explain that I don't, first of all, I don't have the site in front of me. I didn't cite the R.T. site. I just cited the court of appeals opinion. In terms of the deference that you're giving, what I'm saying is, yeah, that's right, I would say that that finding is. That's a rough translation of what 2254D says. Right. Now, what I'm saying is that there was evidence in the record, there's plenty of evidence in the record where she testified that she didn't cite anything. I would love to read it. I know, and I'm sorry, I relied on the court, which the thing was when I wrote my brief, it was based on what the appellant argued. The appellant never argued that Sonia had testified, actually testified to something other than she had fed Jory regularly. So I was responding to that, and that's why I wrote it the way I did in that sense. But the point I wanted to make was this, that if she doesn't see anything wrong with Jory, then the battered woman syndrome or the domestic violence doesn't even come into play, because she has no reason to fear what he's going to do, because he's looking normal. So why should she even bring him in, according to the argument would be, why would she? There's also testimony that was referred to in the briefs that she was saying he was making noise in his room, when in fact the rigor mortis proved he'd been dead for quite some time. That's true, but. Don't make noise. Right, but there were other problems. Where is that in the transcript, or the excerpts, I mean? Okay, is it there? I don't recall that it being there. In fact, I don't even think that that's, I'm just questioning why, Your Honor, what significance this Court is putting on it, because I don't see that being the crucial issue in terms of the evidentiary ruling the Court made. What seems to me to be important in this case is how this played out in terms of the defense that she offered, in one sense, and the other point I think that's important to make is the fact that when we're talking about implied malice, she was able to present a defense, and where she was able to present a defense was in the sense of showing that every time she took care of Jory, she cared whether Jory lived or died, because implied malice means reckless indifference to whether the child's going to live or die. And here she's taking the. I just want to make sure that's a defense, because what Sonia's arguing is she wasn't allowed to put on evidence that she was battered, and if she wasn't, that matters. And if she had any evidence she was battered, that matters. And the Court of Appeals says her defense was, hey, kid looked fine. 2254d2 says unreasonable determination of the facts in light of the evidence. So I'd really love to look at the evidence and see if that was an unreasonable determination of the facts in light of the evidence that I get to look at. Because that's not their determination, that's their paraphrase of her testimony. And the question is not that Jory looked fine, because it's very clear from the evidence that we cited that Jory did not look fine. And so the issue I would say before this Court is not so much whether he actually looked fine or not, but whether she had a right to present a defense, whether her right to present a full defense was prejudicially impaired. Okay, where's the part where she says Jory looked fine? Well, that was, I had the cite to 3612. That was the only cite that I saw in the briefs. The other one I saw was in the, just the Court of Appeals opinion. But the point is, see, that's what's kind of... We don't have 3612. Okay. We skipped from 2980 to 3675. Okay. I don't know if this is mine. 6262. Maybe it will be in yours. Nope, we skipped from 2951 to 3608. We go from 3610 to 3622. 3610 to 3622. I'm sorry. Yep. But that's why I think that looking for the evidence of why Jory looked fine, I want to emphasize, this is a paraphrase of her testimony. It's not a finding of fact by the court. And there's no dispute that she had testified to that. So, I mean, certainly that's not an issue that Appellant has raised in his brief. So I would say that if the court is concerned about the accuracy of that, then I would say that I think that in terms of the issues that Appellant is contending, Appellant really seems to be going on a little bit different track here. That would be my response to that. So the points I wanted to make were essentially this, that she was allowed to testify that she was afraid of Brian, but the point is that there's no relevance to any of this, because she said she thought that Jory looked good. Unless the court has anything further, I would submit it. Thank you, counsel. Okay, thank you. Daniels v. Henry is submitted. We are adjourned for the day. Thank you.
judges: Kleinfeld, Smith, Mills